## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Michael Bonano,

Plaintiff,

**25** No. **CV 5583**

Write the full name of each plaintiff.

(To be filled out by Clerk's Office)

-against-

Zachary Kaplan
A.D.As Sarah Lubin, Mark Monaco^& Maureen
Paparo; NYPD Det. William Tierney; "Nordstrom
Rack" employee Nelson Merida; N.Y. Governor
Kathy Hochul; N.Y. City Mayor Eric Adams;
and Robert Tembeckjian, Administrator of
N.Y. State Commission on Judicial Conduct

## COMPLAINT
(Prisoner)

Do you want a jury trial?
☑ Yes    ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.



RECEIVED
JUL 01 2025
PRO SE OFFICE

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

| Michael | | Bonano |
|---|---|---|
| First Name | Middle Initial | Last Name |

I've used 2 or 3 previously, though I subsequently made clear Michael
~~Bonano is my actual name and used it for every one of my approx. 13~~
State any other names (or different forms of your name) you have ever used, including any name '83 'suits
you have used in previously filing a lawsuit. And I only used alias if incarcerated
thereunder.

B&C#349-220-1734

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

North Infirmary Command, 4 South, 15-00 Hazen St. E. Elmhurst, NY 11370

Current Place of Detention

Institutional Address

County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☑ Convicted and sentenced prisoner

☐ Other: _____

Page 2

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

Sarah                     Lubin
First Name        Last Name                    Shield #

Assistant District Attorney, N.Y. County D.A.'s Office
Current Job Title (or other identifying information)

1 Hogan Place (N.Y. County D.A.'s Office)
Current Work Address

New York                      N.Y.              10013
County, City                  State             Zip Code

Defendant 2:

Mark                      Monaco
First Name        Last Name                    Shield #

Assistant District Attorney, N.Y. County D.A.'s Office
Current Job Title (or other identifying information)

1 Hogan Place (N.Y. County D.A.'s Office)
Current Work Address

New York                      N.Y.              10013
County, City                  State             Zip Code

Defendant 3:

Zachary Kaplan
First Name        Last Name                    Shield #

Assistant District Attorney, N.Y. County D.A.'s Office
Current Job Title (or other identifying information)

1 Hogan Place (N.Y. County D.A.'s Office)
Current Work Address

New York                      N.Y.              10013
County, City                  State             Zip Code

Defendant 4:

Maureen                   Paparo
First Name        Last Name                    Shield #

Assistant District Attorney, N.Y. County D.A.'s Office
Current Job Title (or other identifying information)

1 Hogan Place (N.Y. County D.A.'s Office)
Current Work Address

New York                      N.Y.              10013
County, City                  State             Zip Code

IV. DEFENDANT INFORMATION (Con't)                                    Page 2

Defendant 5:   William  Tierney, Shield/Badge #
               Detective, NYPD, Midtown South Precinct
               Midtown South Pct. 357 West 35th St.
               New York, N.Y. 10008   10001

Defendant 6:   Nelson Merida
               Loss Prevention Detective, "Nordstrom Rack"
               "Nordstrom Rack" store, 865 6th Ave.
               New York, N.Y. 10018

Defendant 7:   Kathy Hochul
               Governor of N.Y. State
               Governor's Office , The Executive Chambers
               N.Y. State Capitol Building
               Albany, N.Y. 12224

Defendant 8:   Eric Adams
               Mayor of N.Y. City
               Mayor's Office, City Hall
               New York, N.Y. 10007

Defendant 9:   Robert Tembeckjian
               Administrator, N.Y.S. Commission on Judicial Conduct
               61 Broadway, 12th Floor
               New York, N.Y. 10006-2701

## V.    STATEMENT OF CLAIM  (SEE, ALSO, ATTACHED "CAUSES OF ACTION", PS. 1-2)

Place(s) of occurrence:    N.Y. COUNTY

Date(s) of occurrence:    CONTINUOUSLY, FROM JUNE 10, 2022 THRU APRIL 15, 2025

**FACTS:** (SEE ATTACHED "STATEMENT OF FACTS")

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.    (SEE ATTACHED "STATEMENT OF FACTS" & EXHIBITS A-C)

Page 4

STATEMENT OF FACTS
Bonano v. Lubin, Monaco, Paparo, Kaplan, Merida, Etc

I. LITTLE INVESTIGATIONS AND EVEN LESS PROBABLE CAUSE

1. On March 25, 2022, I entered a "Nordstrom Rack" at 865 6th Avenue and did surreptitiously place a few items of clothing within my bags and rolling suitcase within the inscrutable confine of their fitting room, then was approached outside of the store by 3 store security employees though I bypassed their alarm system without it activating.

2. The tall, slim African American (later identified in internal NYPD and "Nordstrom Rack" reports as "Craig Perkins") who was the only one of the group to speak suggested "If you just come with us and act like a gentleman, we'll treat you like one.", with which I complied.

3. I was escorted to their security office and I not only allowed them to pat frisk me, when they asked if "You have anything sharp?", frankly advised them I had a pair of scissors; I also had a brand new pair of pliers, in the package with safety nose-guard thereon, both of which they found and placed on their office desk.

4. They also removed my wallet, containing $40 in cash and my N.Y. City Human Resources Administration (hereinafter 'H.R.A.') benefits recipient card, replete with photo and my birthdate, under my actual name; these items would simply be kept by them, with the cash not even mentioned in any report though counted in front of me.

5. Said staffers were going through my bags and seemed to be separating my merchandise acquisitions from other stores (some purchased) from their own items when one asked me "Please have a seat over here.", and motioned to a bench partitioned by armrests, with a handcuff dangling from one of said armrests with the other cuff's pincers wide open; he was suggesting I cuff myself for police.

6. At that point, despite my cooperation with all security requests to that point, despite my having made purchases there before while never having been caught there, I realized that their idea of 'treating you like a gentleman' diverged from my own, and I turned and snatched the packaged and safety-guard-covered pliers they recovered from me and placed on the desk, off the desk and started to swing it from side to side to create from separation between myself and the staffers - and create the impression that I might use it to gain my freedom.

7. My ruse worked, they instantly retreated from me, and I then started to stride through their security office's door when they slammed the solid steel dooron my left arm as I had it extended behind me as I strode; they (at least 2 if not 3) not only slammed the door, they also pushed against it with their collective weight so as to crush my arm between the steel door and doorway, for up to 3 to 5 minutes, prompting me to yell in agony.

8. After said 3-5 minutes, I finally slipped my arm out the doorway, though my overcoat remained wedged in the doorway, to wrest myself from the gang assault, and I proceeded to simply run out the "Nordstrom Rack" front entrance without my wallet, cash, other property, but arm swollen in agony, to escape.

9. I would learn months later that one of my roommates, Ms. Dawn Coughlin Busanet, a beautiful platinum-blonde, blue-eyed Irish American woman, was caught twice stealing felony amounts of 865 6th Ave. "Nordstrom Rack" merchandise within a single hour, yet simply let her pose prettily for a photo and agreement to not return thereto and they waived prosecution; i.e., a different and racially disparate prosecution policy for whites as opposed to Blacks and/orlatinos such as myself.

10. In any event, I continued to attend my court dates for my previous year's arrest and indictment (ind. #457/21, my March 6, 2021 West 57th St. "Nordstrom's" 3rd° Grand Larceny) and a March 13, 2022 arrest at west 34th St. "Macy's" for 4th° Grand Larceny for which I was given a "Desk Appearance Ticket" (hereinafter 'D.A.T.') and release from the Midtown South NYPD precinct on March 14, 2022, as well as for a March 22, 2022 misdemeanor 2nd° Menacing and 4th ° CPW false arrest (eventually dismissed in August 2022).

11. In light of the 2019 hybrid Bail and Discovery Reform, even with the dilutions thereof in 2021 and 2022 by Governor Hochul (esp. CPL §510.10[4][s], conviction for instant offense could result in persistent offender designation), I was given D.A.T.s for the March 13 and March 22, 2022 arrests as (1) I had not had a bench warrant since 1999; (2) the arrests involved "D" non-violent charges or less; (3) neither involved damage to complainant's property or injury to their person; and (4) I had photo identification on me.

12. However, for the earlier indictment (for the March 6, 2021 arrest) I was denied a D.A.T. as I did not have photo I.D., provided an alias (Anthony Cavello) and did not provide a contact who could verify my identity, and was detained thereon until July 14, 2021, when my stepfather, Edgard Acevedo, emptied his retirement account to pay my $10,000 bail - the first and only time my family and I could post bail this millenium; but all the above R.O.R. and bail determinations were made by arresting police and N.Y. County D.A.'s office in consultations prior to criminal arraignment consistent with Bail statutes and revised NYPD policy.

13. In fact, at my late March or early April, 2022 arraignment for the alleged 4th° Macy's Grand Larceny and the March 22, 2022 false 2nd° Menacing charge (now subject of Bonano v. Grant, et al., 1:25-CV-2828, SDNY), upon the attending A.D.A. utilizing the 4th° CPW charges for both March 13 and 22, 2022 incidents, and a 3rd° CPW and intertwined 2nd° Burglary charges presented to a March, 2010 Grand Jury which refused to indict me on any of such charges (i.e., not even constituting reasonable cause to believe), to falsely characterize me as 'dangerous' and thus in 'need' of release supervision, convinced the judge to compel my attendance on a weekly basis to the "C.A.S.E.S." office at West 125th St., for counseling sessions reported and e-mailed to the N.Y. County D.A.'s Office, for a program administered by said office.

14. So, from early April, 2022, I was not only attending all my court dates for the new arrests, but also the "C.A.S.E.S." sessions, as well as Part 92 court dates for ind. #457/21 (and for which $10,000 bail was paid) that included attending several related Judicial Diversion counseling sessions (i.e., Part 92 is Manhattan Treatment Court) at 60 Lafayette St. (another law enforcement building address, directly across from 111 Centre St.).

15. As I navigated and attended these at least dozen law enforcement entity appointments between March and June 2022 (incl. a June 7, 2022 counseling appointment at 60 Lafayette St., with regulated and monitored logbooks), and was never spoken to by investigators from the NYPD or NYCDA's office, I assumed the 865 "Nordstrom Rack" employees didn't even contact the police, presumably content to have regained their merchandise while also remaining with all my property and cash, and even sending me off fresh from a brutal assault by them.

16. However, unbeknownst to me then, the "Nordstrom Rack" employees resolved to contact the Midtown South Precinct the day after the March 25, 2022 incident: March 26.

17. On March 26, 2022, "Nordstrom Rack" employee Craig Perkins spoke with 14th/Midtown South Precinct NYPD officer Joseph Guido and Detectives Keith Kealy and William Tierney, and, as recorded in a multitude of 'DD5' reports, provided my benefits H.R.A. card (w/ name, birthdate and photo), and set forth a skewed, false narrative that omitted his and co-workers' assault of me nor their retention of my property and cash and appeared to pad the items and total of property I attempted to steal from their store.

18. Let's look at instant Exhibit "A", page 1; NYPD report dated "03/26/2022", and titled "INTERVIEW IN-PERSON" which sets forth Craig Perkins' account, including falsely claiming I "was observed removing and concealing multiple items from a display and wrapping the security tags in tin foil" (fitting rooms have solid, 8-foot high doors with no apertures)), and though he did mention my allowing him (and others) to escort me to their office, he lies in concluding his narrative to obscure the gang assault:
"He states that a struggle ensued in which the perpetrator exited the loss prevention office and then attempted to re-enter the office, which they prevented him from doing so. []"

19. Let's now look at page 2 of Exhibit "A", recorded by Off. Guido (though 2-sided); the front, full side, below a box headed "Property", states/reflects:
under heading "Qty Description 6. ASSORTED " and "$ Recovered
HIGH HEELS         Stolen
MISCELLANEOUS 2247"

20. The rest of Exh. A's p.2 omits "Serial #" and "Owner Identification #" and concludes generically at bottom of "PROPERTY" Box "TOTAL VALUES: STOLEN $2247. RECOVERED $ 2247

21. OVER THE COURSE OF THE NEXT 75 DAYS THE REPORTS WOULD CONSISTENTLY STATE "$2247" (WITH ONE EVEN SPECIFYING "$2,247.60"), AT VARIOUS JUNCTURES, THOUGH FOR WEEKS THE "I-CARD" SPECIFIED MERELY FOR "QUESTIONING"; FURTHER, THE TOTAL VALUE SEEMED ARTIFICIALLY INFLATED.

22. THE MIDTOWN SOUTH PRECINCT INVESTIGATORS THEN DID A "PHOTO ARRAY" LINE-UP WITH CRAIG PERKINS AT WHICH HE COULD NOT IDENTIFY ME, AT WHICH POINT THEY THEN UTILIZED ONE OF THE TWO (2) MIDTOWN-SOUTH OFFICERS, BILL BERNABEL, WHO ARRESTED ME ON MARCH 13, 2022 FOR THE "MACY'S" 4TH° GRAND LARCENY CHARGE, FOR A PHOTO LINE-UP AND/OR VIDEO VIEWING (OF THE MARCH 25, 2022 "NORDSTROM RACK" INCIDENT) AFTER WHICH HE MADE AN 'ALLEGEDLY POSITIVE VIEWING.

23. HOWEVER, THE MARCH 13, 2022 ARREST WAS THE ONLY TIME AND A LIMITED SINGLE SERIES OF INTERACTIONS, OVER THE COURSE OF A COUPLE OF HOURS, THAT OFF. BERNABEL HAD EVER SEEN OR SPOKE TO ME IN LIFE, AND PER THE PREVAILING N.Y. STATE PRECEDENT APPLYING TO USE OF A POLICE OFFICER AS A "NON-EXPERT IDENTIFYING WITNESS" (PEO. V. MOSELEY, 41 NY3d 640), SUCH LIMITED EXPOSURE, FOR PARTS OF A SINGLE DAY, COULD NOT POSSIBLY CONSTITUTE THE FAMILIARITY NECESSARY TO SUPPORT THE IDENTIFICATION, NOT EVEN YET FACTORING IN HIS FAILURE TO DESCRIBE ANY UNIQUE PHYSICAL CHARACTERISTICS SUCH AS TATTOO(S) OR SCAR(S) - NONE OF WHICH I HAVE.

24. NEVERTHELESS, IN APRIL, 2022, THE I-CARD AND DOS REPORTS TRANSITIONED FROM REFLECTING ME BEING "WANTED FOR QUESTIONING" TO "PROBABLE CAUSE TO ARREST"; YET NOT ONCE DID THE MIDTOWN SOUTH OFFICERS NOR NYPD WARRANT SQUAD, NOR EVEN THE N.Y. COUNTY D.A.'S OFFICE'S INVESTI-GATORS EVER APPROACH ME AT ANY OF MY VARIOUS COURT DATES, "C.A.S.E.S" W. 125TH ST. OR 60 LAFAYETTE ST. COUNSELING APPOINTMENT - NOR DID THE ATTENDING A.D.A.S BRING IT UP AT ANY OF MY COURT DATES, THROUGHOUT THESE 12 TO 15 LAW ENFORCEMENT AGENCY APPOINTMENTS FROM MARCH 26 THRU JUNE 10, 2022.

25. LET'S NOW LOOK AT PAGE 3 OF INSTANT EXHIBIT "A", A PHOTOCOPY ENLARGED OF MY H.R.A. BENEFITS RECIPIENT CARD, MADE AND INCLUDED IN THE "I-CARD" AND "DD5" NYPD REPORTS GENERATED BETWEEN MARCH 26 THRU JUNE 10, 2022 - MAKING LAW ENFORCEMENT'S FAILURES TO APPROACH AND INTERVIEW ME AT ANY ONE OF MY DOZEN OR MORE LAW-ENFORCEMENT AGENCY APPOINTMENT SCHEDULED AND REFLECTED IN THE DATABASES OF THE UNIFIED COURT SYSTEM, N.Y.P.D., AND N.Y. COUNTY D.A.'s OFFICE LESS REASONABLE, FURTHER UNDERMINING PROBABLE CAUSE.

26. HOWEVER, WHEN I WAS ARRESTED ON JUNE 10, 2022, FOR AN ALLEGED PETIT LARCENY AT AN E. 44TH STREET DUANE READE (SUBSEQUENTLY, EVENTUALLY DISMISSED), I WAS NOT GIVEN A D.A.T. DESPITE:

(1) That day's alleged incident and arrest being for a mere petit larceny not involving any allegation of loss or damage to complainant's property or injury;

(2) The March 25, 2022 "Nordstrom Rack" incident - which suddenly now surfaced during my arrest processing at the 17th Precinct, for the first time, despite my numerous law enforcement agency appointments kept by me throughout the 75-day period - was merely alleged to be 4th° Grand Larceny and also involved no claimed loss of or damage to property or injury to complainants;

(3) I made no attempt to evade investigators, all law enforcement personnel who knew my actual identity and could have easily ascertained the scheduling and my attendance of the law enforcement agency appointments throughout said period (supra, ¶s 13-15) up until my June 10, 2022 petit larceny arrest;

(4) I still had no bench warrants reflected for well over 5 years, was still attending court dates for the earlier indictment upon the continuing $10,000 cash bail, and officials from the same agencies (NYPD and N.Y. County D.A.'s Office) maintained communications throughout the same felony complaint processing, for non-bail eligible charges, that culminated in D.A.T.s issuing three (3) previous times during 2022; and

(5) I had photo I.D. and confirmable address that I provided to the 17th Precinct on June 10, 2022.

27. As a result of the above, I was instead transported to Central Booking to await arraignment, charged and detained thereon.

28. In addition to the June 10 petit larceny I was also charged with 4th° Grand Larceny and 3rd° Menacing for the March 25 "Nordstrom Rack" ALLEGATIONS.

29. In fact, let's look at Page 4 of instant Exhibit "A", the first page (of 2) of the June 10, 2022 felony complaint setting forth the "March 25, 2022" incident "inside 865 6th Avenue", as set forth by Midtown South Precinct Detective William Tierney clearly:

(1) "The defendant is charged with: 1 PL 155.30(1) **Grand Larceny in the Fourth Degree**";

(2) "On or about March 25, 2022 * * * **the defendant stole** property **valued in excess of 1,000 dollars** []";

(3) "I am informed by informant [presumably employee Craig Perkins], who works for Nordstrom's, that they are a custodian of the above described items **and that the items have a value of over $2,000.** []"

(emphases my own)

30. Further, in addition to the NYPD and N.Y. County D.A.'s Office having ignored their own D.A.T. policies and applications in my prior cases and similarly situated instant one, I was again (as with the 2021 indictment) held in lieu of bail upon the identical CPL §510.10(4)(s) 2022 Bail Reform dilution fiction by Gov. Hochul that was advanced by A.D.A. Mark Monaco to keep my past criminal arraignment in 2021:

"[] This D is a discretionary persistent felony offender as defined in Penal Law §70.10 from a Burg 3 conviction where the defendant was sentenced on 3/31/2011 to 6-12 years jail, after having been convicted of Rob 3 and sentenced on 3/10/04 to 42 months to 7 years jail and to Attempted Assault 2 in 2001 where the D was sentenced to 2 years jail on 9/6/01. **Under CPL 510.10(4)(s) monetary bail can be set on this defendant.**"
"Supplementary Facts" A.D.A. Information Sheet by ADA Monaco; instant Exhibit "B"; emphases my own

II. The 4th° "Nordstrom Rack" Grand Larceny Charge/Case Is Falsely Elevated to 3rd° Grand Larceny By A.D.A.s Maureen Paparo and Zachary Kaplan During the June 14-16, 2022 Grand Jury Proceedings By Utilizing Different NYPD Officer(s) and "Nordstrom Rack" Employee(s) Than the Ones Involved in The Initial Report and Investigation and Ones Who Contributed to the Felony Complaint, Resulting in a Malicious 'Shell Game' By ADAs Paparo and Kaplan to Falsely Adduce Perjurious Testimony and Evidence Via Alternate Witnesses, Further Enabled By Informal But Actual N.Y. City Policy That Directs and Allows Retail Chain Stores and NYPD to Forego Basic Evidence Collection Mandated By Criminal Procedure Law, Penal Law, Interpretative Caselaw, Esp. Following Bail/Discovery Reform, For Convenience of Retailers and Detriment of Defendants' Due Process and Fair Proceedings Rights

PAGE 9

31. ON JUNE 14, 2022, AS REFLECTED IN THE COVER PAGE OF THAT GRAND JURY TRANSCRIPT, N.Y. COUNTY A.D.A.s MAUREEN PAPARO AND ZACHARY KAPLAN PRESENTED THE MARCH 25, 2022 ALLEGED 4TH GRAND LARCENY AT THE 865 6TH AVENUE "NORDSTROM RACK" STORE BUT WITH A FEW VARIATIONS FROM WHAT WAS SWORN BY A.D.A. SARAH LUBIN IN THE JUNE 10, 2022 FELONY COMPLAINT.

32. FIRST, UNLIKE THE JUNE 10 FELONY COMPLAINT WHICH SET FORTH 4TH GRAND LARCENY, AND THE PENAL LAW NUMERICAL SECTION OF "P.L. 155.30(1)", AS THE SOLE TOP COUNT THEREFOR, THE INDICTMENT/SUPERIOR COURT ACCUSATORY INSTRUMENT (THE 2 PAGES OF WHICH NOW CONSTITUTE INSTANT EXHIBIT "C", PS. 1 THRU 2) SPECIFIED AS THE MARCH 25, 2022 "NORDSTROM RACK" TOP COUNT 3RD° GRAND LARCENY AND THE CORRESPONDING SECTION "P.L. 155.35".

33. SECONDLY, IN ORDER TO JUSTIFY THE FELONY GRADE (FROM "E" TO "D") AND ULTIMATE SENTENCING EXPOSURE ENHANCEMENTS (FROM "2 TO 4" TO "3½ TO 7"), INSTEAD OF UTILIZING "NORDSTROM RACK" EMPLOYEE CRAIG PERKINS (WHO GAVE NARRATIVES AND "2,247" MERCHANDISE VALUE FIGURES RECORDED IN ALL THE NYPD REPORTS UP UNTIL MY JUNE 10, 2022 ARREST), PAPARO AND KAPLAN SUBSTITUTED HIS CO-WORKER, DANIEL MERIDA - WHO NOW CLAIMED IN THE GRAND JURY (p. 26) THAT THE TOTAL AMOUNT OF MERCHANDISE WAS "$3,107" (p. 3 OF EXH. "C").

34. FURTHERING THAT FALSITY, THE NEXT PAGE OF HIS GRAND JURY TESTIMONY (PAGE 27, p. 4 OF INSTANT EXHIBIT "C"), CONTRARY TO ALL THE NYPD REPORTS AND FELONY COMPLAINT (SUPRA; ALSO, EXHS A & C) ASSERTS:
"A. YES, THE 3 SHIRTS ON TOP, THE TAG IS ON THEM, [ ] EVERY SINGLE ITEM HAS A TAG ON THEM.
Q. FROM THE TAGS YOU ARE ABLE TO KEY IN THE ITEMS AND DETERMINE THE VALUE OF EACH ITEM, CORRECT?
A. YES.
Q. AND YOU CALCULATED THAT $3,000 AMOUNT APPROXIMATELY BY ADDING ALL OF THOSE ITEMS TOGETHER; IS THAT CORRECT? A. YES AFTER MARCH 25, 2022?
Q. DID YOU HAVE ANY FURTHER INVOLVEMENT IN THIS CASE AFTER MARCH 25, 2022?
A. JUST ASSISTING DETECTIVES WITH ANY FURTHER INFORMATION THEY MIGHT HAVE NEEDED, BUT BESIDE THAT, NO."

35. SO, IN SUM, A.D.A.s PAPARO AND KAPLAN SUBSTITUTED DANIEL MERIDA FOR ORIGINAL AND ACTUAL INFORMANT CRAIG PERKINS SO AS NOT TO BE CONSTRAINED TO THE "ASSOCIATED HIGH HEELS" SPECIFIED IN THE I-CARD AND 'DD5' NYPD REPORTS OVER THE 75 DAYS BETWEEN THE MARCH 25, 2022 INCIDENT AND MY JUNE 10, 2022 ARREST. OR EVEN THE "MORE THAN $1,000" AND "MORE THAN $2,000" ALLEGED IN THE INITIAL ACCUSA- TORY INSTRUMENT/FELONY COMPLAINT, AND INSTEAD NOW ALSO ADD "3 SHIRTS" (INTER ALIA) AND $900 TO FALSELY AMPLIFY THE FELONY GRADE AND MAXIMUM POSSIBLE SENTENCE FOR MY CASE.

36. BUT PROSECUTORS PAPARO AND KAPLAN FURTHERED THEIR GRAND JURY SHELL GAME AND LEGAL MALICE BY OMITTING TESTIMONY THEREIN FROM FROM FELONY COMPLAINT DEPONENT AND MIDTOWN SOUTH DETECTIVE WILLIAM TIERNEY OR ANY OTHER OFFICER ACTUALLY INVOLVED IN THE MARCH 25 TO JUNE 10, 2022 'INVESTIGATION' (MINUS APPROACH AND INTER- VIEW WITH ME AT ANY ONE OF MY DOZEN OR MORE LAW ENFORCEMENT AGENCY APPOINTMENTS SCHEDULED IN ADVANCE) AND INSTEAD HAD OFFICERS BRENDAN GREIBEL AND BILL BERNABEL - WHO ONLY WERE INVOLVED IN MY MARCH 13, 2022 "MACY'S" ARREST AND OTHERWISE ONLY 'IDENTIFIED' ME FROM THE "NORDSTROM RACK" VIDEO WHEN CRAIG PERKINS COULD NOT.

37. FINALLY, OFFICERS GREIBEL AND BERNABEL OMITTED ANY MENTION OF VALUE OF THE MERCHANDISE I WAS ALLEGED TO HAVE ATTEMPTED TO STEAL TO SHIELD THE NYPD AS CO-DEFENDANTS IN SUBORNING AND ADDUCING PERJURY.

38. THIS MAY BE THE REASON WHY THE PAPARO-KAPLAN TEAM DECIDED TO ALSO PRESENT THE MARCH 13, 2022 ALLEGED 4TH° "MACY'S" GRAND LARCENY WITH THE MARCH 25, 2022 "NORDSTROM RACK" LARCENY TO THE SAME GRAND JURY FROM JUNE 14 TO JUNE 16 AFTER HAVING PROVIDED '190.50' NOTICE AT MY JUNE 10, 2022 CRIMINAL ARRAIGNMENT FOR THE LATTER ONLY.

PAGE 11

39. IN FACT, I DID NOT EVEN LEARN OF THE COVERT-BUT-DUAL-CASE GRAND JURY PRESENTATION UNTIL SEPTEMBER, 2022, WHEN I WAS FINALLY SENT COPIES OF MY 2022 INDICTMENT AND THE JUNE 14-16 GRAND JURY TRANSCRIPT FROM THE LEGAL AID SOCIETY - AT WHICH POINT I FILED MY SECOND CPL §210.20/§190.50(5) MOTION THEREON (SEE EXH.C, p.2).

40. AND, THAT SAME SEPTEMBER 2022 DAY RECEIPT OF THE GRAND JURY TRANSCRIPT AND INDICTMENT WAS THE FIRST TIME I ALSO LEARNED THAT THE AMOUNT OF MERCHANDISE I WAS ALLEGED TO HAVE ATTEMPTED TO STEAL WAS RAISED FROM WHAT WAS ALLEGED IN THE FELONY COMPLAINT ("OVER $1,000" AND, ALTERNATELY "OVER $2,000") TO "OVER $3,000" IN THE INDICTMENT AND GRAND JURY TRANSCRIPT (EXH. C, ps. 1, 3 & 4) IN ORDER TO RAISE THE FELONY GRADE FROM "E" TO "D" AND MAXIMUM SENTENCE EXPOSURE FROM "2 TO 4" TO "3½ TO 7".

41. I ADDRESSED ALL OF THESE PROCEDURAL AND SUBSTANTIVE DEFECTS AND SUBORNED PERJURY REPEATEDLY, AT LEAST PARTLY IN MY 2ND 190.50 MOTION AND COMPLETELY WITHIN MY OWN OMNIBUS MOTION FOR IND.# 72621/22, THEN SUBSEQUENTLY WITHIN A SEPARATE, SUBSEQUENT PEOPLE V. CLAYTON, 41 AD2d 204/CPL §210.40 MOTION TO DISMISS, AND WITHIN MY 2024 OPPOSITION TO A.D.A. PAPARO'S MOTION TO CONSOLIDATE INDICTMENTS #457/21 AND 72621/22 - THEN FINALLY WITHIN AN AUGUST 25, 2024 CPLR 2221 MOTION, ALL IGNORED BY JUDGES CARRO AND BELLER IN PERPETUITY BY WITHHOLDING ANY REQUISITE (CPLR 2219) WRITTEN DECISION AND ORDER THEREON (ALSO CPL 210.45) DESPITE MY PURE PRO SE STATUS.

42. BUT PERHAPS THE PRIMARY SOURCE OF ALL THE DUE PROCESS CIRCUMVENTION AND DEPRIVATION WAS THE ESCHEWAL/FORFEITURE/WAIVER OF THE MOST BASIC EVIDENCE COLLECTION PROCEDURE; DESPITE CPL § 245.20(1), (1)(i), (1)(m) & (1)(o), P.L. §450.10, PEOPLE V. KELLY, 62 NY2d 516 AND "THE NYPD PATROL GUIDE" ALL MANDATING VOUCHER AND STORAGE OF ALL ALLEGEDLY STOLEN PROPERTY FOR AT LEAST 15 DAYS, IT WAS RETURNED IMMEDIATELY.

PAGE 12

43. FOR THE MARCH 25, 2022 "NORDSTROM RACK" CASE (AND THE OTHER TWO, INCLUDING THE MARCH 6, 2021 "NORDSTROM'S" AND MARCH 13, 2022 "MACY'S"), THE STORE SECURITY EMPLOYEES WERE ALLOWED TO REMAIN WITH THEIR PROPERTY ALLEGED TO HAVE BEEN ATTEMPTED TO BE STOLEN BY ME. AS STATED IN GRAND JURY TESTIMONIES AND POLICE AND INTERNAL STORE SECURITY REPORTS, AND INSTEAD MERELY GIVE THE POLICE CELL-PHONE PHOTOS OF THE MERCHANDISE.

44. EVEN BASED ON PRE-EXISTING PRECEDENT PRIOR TO THE 2019 BAIL/DISCOVERY REFORM, PEOPLE V. KELLY, 62 NY2d 516, AT 520, HELD EXPLICITLY THAT "THE DUTY TO DISCLOSE MATERIAL EVIDENCE IMPOSES ON THE PROSECUTION THE COROLLARY OBLIGATION TO PRESERVE MATERIAL EVIDENCE."

45. THE KELLY PRECEDENT HAD LONG SETTLED THE PRINCIPLE THAT THE FAILURE OF THE POLICE AND PROSECUTION TO VOUCHER AND STORE ALLEGEDLY STOLEN PROPERTY FOR AT LEAST 15 DAYS TO ALLOW THE DEFENSE NOTICE OF OPPORTUNITY TO PERSONALLY AND PHYSICALLY INSPECT AND/OR TEST THE ITEMS, PRIOR TO THEIR RETURN TO OWNERS/COMPLAINANTS ENTITLED DEFENDANT TO AT LEAST "AN ADVERSE INFERENCE CHARGE" TO THE JURY REGARDING THE FAILURE TO PRODUCE THE ACTUAL, PHYSICAL ITEMS AT TRIAL - IF NOT ALSO CASE DISMISSAL.

46. HOWEVER, VIRTUALLY ALL THE CPL ART. 245 INTERPRETATIVE CASE LAW, ESPECIALLY PEOPLE V. BAY, 41 NY3d 200, MANDATES DISMISSAL FOR FAR LESS CENTRAL AND MUCH MORE PERIPHERAL DISCOVERY OMISSIONS (SUCH AS 2022'S PEO.V. BEST AND PEO. V. AMIR, BOTH DISMISSED DUE TO MERE PROVISION OF CCRB "SUMMARIES" OF OFFICERS, RATHER THAN THE ACTUAL MISCONDUCT RECORDS, EVEN FOR OFFICERS NOT EXPECTED TO TESTIFY FOR THE PROSECUTION), THE FAILURE TO VOUCHER AND STORE THE PRIMARY PHYSICAL EVIDENCE INDISPUTABLY NOW MANDATES DISMISSAL.

47. BUT MY FOIL REQUESTS TO NYPD AND D.A'S OFFICE FOR THIS POLICY PERMITTING SHIRKING OF BASIC EVIDENCE COLLECTION WAS DENIED.

48. THE PRIMARY EVIDENCE PRESERVATION ISSUE WAS ONLY DECIDED IN RELATION TO THE CPL § 30.30 (1)(a) AND (b) MOTION I RAISED IT IN, IN 2023, BY PART 32's GREGORY CARRO : HE DECEITFULLY AND DISGRACEFULLY, OBTUSELY OPINED "THE POLICE WERE NEVER IN POSSESSION OF THE PROPERTY", TO ABSOLVE THEM, THOUGH THIS RIDICULOUSLY IGNORED THE POLICE CONSCIOUSLY REFRAINING FROM TAKING CONTROL OF THE PHYSICAL EVIDENCE AND THE PROSECUTOR CONFERRING WITH THE ARRESTING POLICE NOT ORDERING COMPLIANCE THEREWITH (CPL § 245.20(1), (1)(i), (1)(m) § [1][i]; P.L. § 450.10).

49. ESPECIALLY when one factors in <u>People v. Joseph</u>, 86 NY2d 565, and its primary principle that "the best evidence is the original evidence", and <u>People v. Patterson</u>, 39 NY2d 288, 295 specifying what constitutes "fundamental error" even excusing the necessity of preserving the error:

> "There is one very narrow exception to the requirement of a timely objection. A defendant in a criminal case cannot waive, or even consent to, **error that would affect the organization of the court or the mode of proceedings prescribed by law.** [] Thus the rule has come down to us that where the court had no jurisdiction, or where the right to trial has been disregarded, **or where there was a fundamental, non-waivable defect in the mode of procedure** then an appellate court must reverse, even though the question was not formally raised below."

(emphases my own; I actually cited and quoted these principles in my 30.30 motion raising this failure to preserve evidence issue, but I cite and quote this principle here to emphasize nature of error and <u>entitlement to relief</u> of dismissal of criminal case)

50. As it concerned the <u>other</u> primary issue that was <u>keeping</u> me detained, the fictitious 'potential discretionary persistent offender strawman' enabled by Governor Hochul via passage of CPL 510.10(4)(s), I challenged it in various motions, including my Omnibus Motions, as well as a Motion Challenging the Constitutionality of 510.10(4)(s) and related statutes such as P.L. §70.10 and CPL §400.20, under these factual premises:

(1) As my presently charged Grand Larceny cases consist of conventional retail store shoplifting incidents (and indeed my whole criminal history since 1993) it was not even feasible to be deemed deserving of "extended incarceration or lifetime supervision";

(2) Per the principle of collateral estoppel the N.Y. County D.A.'s Office could not be allowed to pretend or proclaim I could possibly qualify as a discretionary persistent as **their own office conceded in their Appellate Reply Briefs that my** '01 Attempted Assault in the 2nd° (A.D.A. Donald J. Siewert) and '04 3rd° Burglary convictions (A.D.A. Eli R. Koppel) conceded my pro se constitutional claims of Ineffective Assistance of Counsel, and Bias of <u>the Trial Judge</u>, respectively; and

(3) 510.10(4)(s) also VIOLATES THE U.S CONSTITUTION'S VITH AMENDMENT'S AND N.Y. CONSTITUTION'S ART. 1, §6 CLAUSES PROHIBITING DETENTION "UPON AN INFAMOUS OR OTHERWISE HEINOUS CRIME EXCEPT UPON INDICTMENT"; AS THE 2019 BAIL REFORM ESSENTIALLY AND INESCAPABLY CREATED OR RESULTED IN AN ENTIRE CLASS OF FELONIES <u>NOT</u> CONSISTING OF "INFAMOUS OR OTHERWISE HEINOUS CRIME": NON-VIOLENT D AND E FELONIES, AS SOMEONE ACCUSED THEREFOR <u>CANNOT</u> BE DETAINED THEREON BEFORE OR AFTER CONFINEMENT, BUT ONLY AFTER CONVICTION - SO ARTIFICIAL EXCEPTION FOR AUTOMATIC R.O.R. THEREON SOLELY FOR PREVIOUSLY DESIGNATED PREDICATES IS A COMPLETE AND DIRECT VIOLATION OF EQUAL PROTECTION.

51. HOWEVER, MY DECEMBER, 2024 FILING OF MY MOTION CHALLENGING CPL § 510.10(4)(s) AND THE DISCRETIONARY PERSISTENT STATUTES WAS ACTUALLY <u>RETURNED</u> TO ME ON JANUARY 8, 2025, IN PART TAP-B BY THEN-PRESIDING JUDGE BETH BELLER (ALONG WITH <u>6</u> OTHER FILINGS) WHO REFUSED TO REVIEW OR EVEN PLACE MY SUBMISSIONS IN THE COURT FILE; THEY WERE STILL STAPLED TO THE MANILA ENVELOPES IN WHICH I MAILED THEM.

52. THAT WASN'T THE ONLY PERTINENT ISSUE 'JUDGE' BELLER CIRCUM-VENTED; AFTER I <u>CLEARLY</u> PRESENTED THE FALSE EVIDENCE AND FELONY GRADE AMPLIFICATIONS INHERENT IN THE JUNE 14 TO 16, 2023 "NORDSTROM RACK" GRAND JURY PRESENTATION FROM THE ALLEGATIONS IN THE JUNE 10, 2022 FELONY COMPLAINT, IN MY 2-PAGE OPPOSITION TO PEOPLE'S MOTION TO CONSOLIDATE THE INDICTMENTS (SUPRA, ¶ ), SHE OBTUSELY AND NONSENSICALLY ATTRIBUTED IT TO MERELY "<u>A TYPOGRAPHICAL ERROR</u>." IN HER AUGUST 12, 2024 DECISION AND ORDER (PAGE 2 THEREOF).

53. BUT WHEN I <u>SWIFTLY</u> FILED A CPLR 2221 MOTION OF ELEVEN (11) PAGES COMPLETELY AND REPEATEDLY DISMANTLING JUDGE BELLER'S DECEIT, SHE <u>REFRAINED</u> FROM DISPOSING OF IT IN A WRITTEN DECISION AND ORDER REQUIRED BY N.Y.'S CPLR RULE 2219 AND ONLY DID SO <u>VERBALLY AND VAGUELY</u>.

54. FINALLY, THOUGH I HAD FILED MOTIONS (IN BOTH OMNIBUS MOTIONS AND AT LEAST ONE OF MY 2024 STATUTE-CHALLENGING MOTIONS), WHEN I ATTEMPTED TO ADDRESS THE OUTSTANDING PREDICATE OFFENSE CHALLENGE AND QUESTION, AFTER JUDGE MENNIN (OCT. 23, 2024, PART TAP-B) TRIED TO SLOUGH OFF THE MATTER BY FALSELY ASSERTING "THEY JUST FILE A CERTIFICATE," I CITED AND QUOTED FROM CPL §400.21's "PRACTICE INSIGHTS":

"THERE ARE 2 COMMON ERRORS MADE IN CHALLENGING ENHANCED SENTENCING DESIGNATIONS [ ]. THE FIRST ERROR IS FAILURE TO CAREFULLY EXAMINE THE PRIOR CONVICTION, INCLUDING ITS CONSTITUTIONALITY. OFTEN, THE ADJUDICATION PROCESS IS HASTILY CONDUCTED AND PARTIES MAKE ASSUMPTIONS ABOUT A PRIOR CRIME BASED ON PARTIAL INFORMATION THAT PROVES TO BE INACCURATE.

WITHOUT CAREFUL EXAMINATION OF THESE ISSUES AT THE EARLIEST OPPORTUNITY, AND A PROMPT CHALLENGE, THE CONTENTION BECOMES EFFECTIVELY NON-REVIEWABLE IN FUTURE PROCEEDINGS, AND A CLIENT WHO IS NOT A PREDICATE FELON MAY BE FORCED TO SERVE TIME AS A PREDICATE FELON. THE SECOND COMMON ERROR IS TO OMIT A CHALLENGE TO THE CONSTITUTIONALITY OF THE DISCRETIONARY PERSISTENT FELONY OFFENDER PROVISION, COUNSEL CAN AND SHOULD ARGUE THAT THIS STATUTE IS UNCONSTITUTIONAL, BECAUSE IT RAISES THE RANGE OF SENTENCING OPTIONS BASED ON ADDITIONAL FACT-FINDING NOT MADE BY A JURY."

55. BUT JUDGE MENNIN CUT ME SHORT LESS THAN HALFWAY, AND PLEASE NOTE THAT OVER A YEAR EARLIER ANOTHER JUDGE (ANNE W. SWERN OF PART 92) DID A 'BAIT AND SWITCH' INVOLVING AN INITIAL PROMISE OF A PREDICATE HEARING, THEN SUBSEQUENTLY RELEGATING A PREDICATE CHALLENGE TO "FILINGS" ONLY, THEN COMPLETELY REVERSING HERSELF (FROM APRIL 27, 2023 THRU JUNE 29, 2023) BY FALSELY CLAIMING 'THIS JUST DRUG COURT; WE DON'T DO ACTUAL CRIMINAL HEARINGS AND STUFF HERE' - CULMINATING IN MY ANGRY AND SWIFT SUBMISSION OF A MOTION TO WITHDRAW MY PLEA AND FOREGO DRUG TREATMENT, GRANTED AUG. 29, 2023.

56. RELATEDLY, THE PROSECUTION NEVER FILED OR EVER SUGGESTED THAT THEY WOULD FILE A DISCRETIONARY PERSISTENT OFFENDER APPLICATION, BUT JUDGE BELLEU'S RETURN OF MY FORMAL MOTION CHALLENGING THE STATUTE ALONG WITH ALL THE OTHER JUDGES DODGING ANY DETERMINATION OF MY ACTUAL SENTENCING STATUS CONSIGNED ME TO FINALLY ATTEMPTING TO FILE A HABEAS CORPUS PETITION IN BRONX COUNTY FROM OCTOBER 2023, REPEATEDLY, THRU FEBRUARY 2024. THEN WAS WILDLY BELATEDLY DODGED AFTER A SINGLE VIDEO-CONFERENCE IN APRIL, 2024 WITH NO WRITTEN DECISION OR TRANSCRIPT.

57. I NOT ONLY ATTACKED THE CONTRIVED AND UNCONSTITUTIONAL CPL§ 510.10 (4)(s) EXCEPTION TO THE BAIL REFORM'S PROHIBITION AGAINST HOLDING ANYONE IN LIEU OF BAIL CHARGED WITH A NON-VIOLENT "D" OR "E" FELONY, MY ACTUAL SENTENCING STATUS AND EVEN THE WILDLY EXTORTIONATE, ARBITRARY AND UNCONSTITUTIONAL BAIL IMPOSED UPON MY JUNE 10, 2022 REMAND (NOW $40,000 CASH AND $66,000 BOND DESPITE 2 NEW 4TH° GRAND LARCENY CASES)· THOUGH EVEN THE EARLIER BAIL ($10,000 FOR IND.#457/21) WAS HIGHER THAN ANY PRIOR ONES, FOR MORE SERIOUS CASES ($2,500 FOR 2 COUNTS OF 2ND° ASSAULT, IND.#4457/00 & $5,000 FOR 1ST° ROBBERY IN 2009, IND.#2237/09) WELL BEFORE THE 2019 BAIL REFORM, NEITHER OF WHICH I COULD PAY.

58. SO, DESPITE MY REPEATEDLY ADVANCING THE (1) FICTITIOUS AND UNCONSTITUTIONAL 'POTENTIALLY DISCRETIONARY PERSISTENT OFFENDER' LABEL BEING USED TO FALSELY DENY ME OTHERWISE MANDATORY 'R.O.R.', (2) THE WILDLY EXCESSIVE $40,000 CASH BAIL; AND (3) THE FALSE AND PERJURIOUS GRAND JURY ELEVATION OF THE MARCH 25, 2022 "NORDSTROM RACK" GRAND LARCENY FROM 4TH° TO 3RD°, ALL OF THE JUDICIAL CIRCUMVENTIONS OF MY MERITORIOUS PROCEDURAL AND SUBSTANTIVE ISSUES, AIDED AND ABETTED BY THE PROSECUTORS DESPITE THEIR ETHICAL AND COMMON LAW OBLIGATIONS "TO SEEK JUSTICE, NOT JUST CONVICTIONS", RESULTED IN MY NAVIGATING THE 'TRIAL POSTURE' PART TAP-B PROCESS WITHOUT A DECISION THEREON.

III. MY 'FINAL' PART TAP-B COURT DATE OF MARCH 17, 2025, RESULTS IN A CONSPIRACY CONFERENCE AT WHICH NOW-PRESIDING JUDGE SARA L. LITMAN, A.D.A PAPARO AND 'MY' STAND-BY COUNSEL/LEGAL ADVISOR MR. PASACRETA CALLED MY CASE AND DISCUSSED IT IN DEPTH, WITHOUT ME PRESENT (THOUGH I WAS IN PART TAP-B DETAINEE BULLPEN ALL DAY) INCLUDING DECIDING TO FORECO OMITTED DISCOVERY AND UNDISPOSED OF MOTIONS TO 'FAST-TRACK' ME TO START TRIAL THE NEXT MORNING WITHOUT EVEN NOTIFYING ME - RESULTING IN A SUCCESSION OF COURT PARTS AND SERIES OF COURT DATES BEFORE FINDING AN ACCOMODATING JUDGE (PART 95'S DANIEL P.CONVISER) WHO WOULD NOT ACKNOWLEDGE AND ADJUDICATE THE FALSE "NORDSTROM RACK" EVIDENCE AND FELONY GRADE AMPLIFICATIONS UNTIL AFTER I BLEW UP AND CURSED HIM IN ANGER AND ADVISOR PASACRETA FINALLY VOICED AGREEMENT ON THE ISSUES

59. ALTHOUGH I HAD DISCUSSED THE JUNE 14-16, 2022 GRAND JURY EVIDENCE TAMPERING AND PERJURY IN ENHANCING THE ALLEGED "NORDSTROM RACK" 4TH° GRAND LARCENY TO 3RD° WITH ADVISOR PASACRETA, IN <u>AT LEAST</u> 2 VIDEO CONSULTATIONS (ONE A WEEK <u>PRIOR</u> TO MY MARCH 17, 2025 COURT DATE), AND ADDRESSED IT IN AT LEAST 3 COURT FILINGS THAT I ALSO SERVED UPON A.D.A. PAPARO, <u>NEITHER</u> COUNSEL ADDRESSED OR EVEN ACKNOWLEDGED IT AS A DEFENSE ALLEGATION IN SEEING THAT <u>NONE</u> OF THE JUDGES WISHED TO ADJUDICATE IT.

60. Then came my March 17, 2025 scheduled court date in Part TAP-B; ALTHOUGH I HAD BEEN TRANSPORTED TO, AND PLACED IN, THE TAP-B DETAINEE BULLPEN FROM 8:30 A.M. TO 5 P.M., MY CASE WAS CALLED, CONFERRED UPON AND CONCLUDED BY NEWLY PRESIDING JUDGE SARA R. LITMAN, A.D.A. PAPARO AND 'MY' STAND-BY COUNSEL / LEGAL ADVISOR RICK JAMES PASACRETA, <u>WITHOUT ME PRESENT</u>.

61. HAD I BEEN CONVENTIONALLY <u>REPRESENTED</u> BY COUNSEL PASACRETA THIS WOULD HAVE BEEN A COMPLETE AND DIRECT VIOLATION OF MY RIGHTS TO BE PRESENT FOR ALL MATERIAL PROCEEDINGS UNDER <u>PEOPLE V. ANTOMMARCHI</u>, 80 NY2d 247, AND THE CONSTITUTIONS, BUT THE VIOLATION - AND CONSEQUENT CONFLICT OF INTEREST[1] <sup>BY COUNSEL</sup> - WAS EXPONENTIALLY QUANTIFIED BY VIRTUE OF MY <u>PROCEEDING</u> PURELY PRO SE.

62. HOWEVER, COMPOUNDING THESE VIOLATIONS OF THE MOST BASIC CONCEPTS OF DUE PROCESS AND FAIR PROCEEDINGS EVEN FURTHER WAS ALL 3 OFFICERS OF THE COURT DECIDING ON MARCH 17, 2025, IN TAP-B, TO 'FAST-TRACK' ME TO START TRIAL, THE <u>NEXT</u> MORNING, MARCH 18, 2025, IN PART 99, WITHOUT RESOLVING OMITTED DISCOVERY AND OUTSTANDING MOTIONS - AND <u>NOT EVEN NOTIFYING ME</u>.

63. I THUS BELIEVED I WOULD APPEAR IN TAP-B ON MARCH 18, 2025.

64. SO WHEN I WAS PLACED IN <u>ANOTHER</u> DETAINEE BULLPEN AREA AND WAS APPROACHED BY COURT OFFICERS AT 9:45 A.M. AND THEY HELD ALOFT A GENERIC "BOB BARKER" COLLARED WHITE SHIRT, BEIGE KHAKIS AND SNEAKERS ('DETAINEE WEAR') WITH NO TIE OR JACKET AND TOLD ME "PUT THESE ON... YOU'RE STARTING JURY SELECTION <u>RIGHT NOW</u>.", I WAS FLABBERGASTED.

65. I RECOVERED ENOUGH TO REFUSE THE COMPROMISING 'COURT-CLOTHING' AND, UPON ENTERING PART 99, SAW A THRONG OF PROSPECTIVE JURORS IN THE BACK OF THE COURTROOM, THEN COMPELLED BY PRESIDING JUDGE BRENDAN T. LANTRY TO "TELL ME WHY YOU'RE NOT READY FOR TRIAL.", AND I REELED OFF A FEW MATTERS OF DISCOVERY OMISSIONS <u>AND</u> INFORMED HIM I HAD (WITH A PART TAP-B CAPTION) "A 30.30 (1)(a) MOTION FOR DISMISSAL", SETTING FORTH ALL OF THE ABOVE FACTS AND MORE.

66. AFTER SOLICITING A REPLY FROM A.D.A. PAPARO BUT RECEIVING A VAPID AND VAGUE RESPONSE FROM HER, JUDGE LANTRY (WHO, FAR FROM BEING A 'CODDLER OF CRIMINALS' OR EVEN A LIBERAL, IS A MEMBER OF "THE YOUNG REPUBLICANS' CLUB") WOULD SET MY CASE FOR "SECOND CALL" TO MORE CAREFULLY REVIEW MY CPL §30.30 MOTION, THEN SUMMONED ME BACK <u>6 HOURS</u> LATER, RESOLUTELY STATING: "I'M SENDING THIS BACK TO TAP-B, THE PEOPLE ARE TO REPLY TO THE DEFENDANT'S MOTION TO DISMISS BY THE 27TH [OF MARCH], AND THE [TAP-B] COURT TO RENDER DECISION BY THE 7TH [OF APRIL], <u>AND IF THIS CASE GOES TO TRIAL, IT WON'T BE HERE</u>."

67. ON APRIL 7, 2025, FOR THE SECOND SUCCESSIVE Part TAP-B court date, my case was called, conferred upon <u>and</u> concluded by J. Litman, A.D.A. Paparo and stand-by counsel/advisor Pasacreta, without me present, despite my placement in the TAP-B detainee bull-pen the entire day - and my 30.30 motion was pretextually and wrong-fully denied by J. Litman via alternative facts and math.

68. During my TAP-B placement period (from August 2024 thru April 7, 2025) I filed complaints against Judges Beller, Mennin and Litman clearly setting forth the above (inter alia) circumventions of basic facts and laws, to the Commission on Judicial Conduct.

69. Especially as the U.S. Supreme Court has previously and repeatedly allowed and awarded judges with complete and "absolute judicial immunity" from civil rights lawsuits, including Stump v. Sparkman, "regardless of how malicious the conduct", and as judges are not prosecuted for wrongfully denying dismissal of a case or even falsely and knowingly convicting an innocent person, the only bulwark against judicial tyranny and to ensure judges adhere to the law even when it threatens to inure to the benefit of defendant or deprive their pet prosecutors of the felony convictions they so thirst for 'by any means necessary'.

70. Unfortunately, Mr. Robert Tembeckjian administers the Commission with much obtuseness and as a toothless tiger, and has so far dismissed each and every complaint I have filed not only during this period and term of detention and case disposition but for every one I have filed during the course of my quarter century of precise and prolific pro se litigation career despite the factual and legal merits establishing not just bias, but profound and pervasive bias.(e.g., Liteky v. U.S., 510 U.S. 540, 551).

71. The result of this elitist (I have filed every complaint as a purely pro se litigant, without any corrboration or support from a defense attorney) and ultimately racist (overwhelming majority of detained defendants are Black and Latino) refusal to remove or even rein in judges clearly ignoring substantial procedural and substantive defects in the People's case when raised by the defense, has actually perpetuated and promoted judicial lawlessness.

72. Exacerbating this systematic People-pleasing, anti-defense bias and unbalanced mode of criminal case adjudications is the policy of both N.Y. State Governor Kathy Hochul and Mayor Eric Adams to appoint **almost exclusively** former prosecutors to the judiciary in the criminal courts; please note that the 2019-legislated and subsequently created Commission on Prosecutorial Conduct, per legislative direction, mandated that said agency's inaugural administrator **"cannot ever have been an assistant district attorney or district attorney in New York State"** - clearly evincing legislative awareness that **former prosecutors have <u>no</u> inclination to hold badly behaving prosecutors accountable**, and intent to avoid it further.

73. Adding yet another layer of civil rights-jeopardizing judicial appointment policy in N.Y. State is the continued practice of appointing predominately white/Caucasian judges, exacerbated by an overwhelmingly Black and Latino pool of criminal defendants, policies which were advanced and acknowledged in the class-action lawsuit brought by ethnic minorities regarding N.Y. City Family Court administration, corroborated by the **Franklin H. Williams Judicial Commission in 2022.**

74. Back to my April 7, 2025 Part TAP-B court date (supra, ¶s 66-67), it was not only the second consecutive scheduled TAP-B court date that was held while excluding me, the defendant (the only party in proceeding whose life, liberty and property are in jeopardy) from the courtroom and preventing me from being heard or even aware of case progression or developments (i.e., **Conspiracy, by state officials/officers of the court, per 18 U.S.C. §§241 & 242**), but would be followed by yet 2 more court transports of April 9 and April 13, 2025 (but for Part 95) where my case was called and discussed without me present in the courtroom, and left in bullpen.

75. The Unified Court System's own website's print-out of my case reflected the names of different judges on such said dates, on which I was not produced in the courtroom, which would make 4 out of 5 consecutive court dates on which this conspiratorial, due process-depriving phenomena was employed (with sole exception of March 18, 2025, Part 99), which, especially in light of the covert 'fast-tracking' of my case to start trial hatched by Litman, Paparo and Pasacreta in TAP-B on March 17, for March 18 (supra, ¶s61-63), surely meant more state official skullduggery, forum shopping, and other and further constrictions of my due process, compulsory process and fair trial rights.

76. Then came April 15, 2025, which, though was the 3rd time in a row that I was produced and transported for a Part 95 court date, was the first time I actually appeared therein, and that day's assigned Judge (Daniel P. Conviser) was the third different one assigned thereto.

77. Either Mr. Conviser did not heed Judge Brendan Lantry's clear signal that my case was delayed far too long, for the most trivial felony offenses that exist, and involved too many other procedural and substantive defects and misconduct to deny me dismissal or preside over trial therefor - or was simply not apprised of his warning (supra, ¶66) by either A.D.A. Paparo or 'my' counsel.

78. Similarly as with Judge Lantry, I informed 'judge' Conviser of the various Discovery omissions - in fact, A.D.A. Paparo stated therein that day that she had more Discovery documents to give me, which under 2019 Bail Reform and CPL §§245.20 & 245.25, entitled me to at least a 7-day adjournment - and stated I had 3 motions to give him, "two being Motions to Dismiss, one of which is a CPL§30.20 motion".

79. However, upon entry to his courtroom, Mr. Conviser had tried to entice me to enter a plea to "2 to 4" by noting (as if he had in-depth discussions about my case with ADA Paparo and counsel Pasacreta without me present, again) "You have 39 months in [as a detainee], Since you already have the time in, I would let you go home today; how does that sound?"

80. I NOT ONLY IMMEDIATELY REJECTED THE 'OFFER', BUT COMPARED THE HUGE RACIAL DISPARITY IN PROSECUTORIAL AND PENAL ENERGY DEVOTED BY THE SAME N.Y. COUNTY D.A.'S OFFICE AND COURTS IN SO GENTLY PROCEEDING IN PEOPLE V. DAVIS LANCE (2023), THE WHITE DEFENDANT IN A CASE OF FORCIBLE RAPE MEETING ALL THE ELEMENTS OF 1ST° RAPE, WHO ESCHEWED ANY PLEA DEAL, PROCEEDED TO JURY TRIAL AND WAS CONVICTED OF THE TOP COUNT OF THE INDICTMENT, YET WAS ONLY GIVEN A 1½ YEAR PRISON TERM BY JUDGE KATE PAEK AFTER THE N.Y. COUNTY D.A.'S OFFICE ONLY ASKED FOR 3:

"YOU'RE NOT GIVING THIS MERE LATINO SHOPLIFTER MORE TIME, FOR A PLEA, THAN YOU GAVE THE WHITE RAPIST AFTER HE LOST TRIAL!"

81. MR. CONVISER THEN WARNED ME HE "COULD" NOT ONLY SENTENCE ME MAXIMALLY, BUT CONSECUTIVELY FOR THE 2 SHOPLIFTING INDICTMENTS.

82. WHEN I THEN ASKED ABOUT THE MOTIONS, AFTER VACILLATING ABOUT WHETHER HE WOULD ACCEPT THEM AS HE "ALLOWED YOU TO GO ON FOR THE LAST HALF HOUR TO 45 MINUTES" (THOUGH SOLICITED BY HIM), I WAS ALLOWED TO DETAIL THE MERITS OF THE MOTION TO DISMISS that included the false amplification of the evidence and felony grade for the "Nordstrom Rack" 2022 Grand Larceny from 4th to 3rd°, he claimed that was "not an issue for dismissal, but is a good issue for trial" despite my citations of cases such as People v Dominique Strauss-Kahn (2011), Peo. v. Tracy McCarter (2023) and Peo. v Horowitz, Inciarda & Kosinski (2024) as N.Y. County D.A.'s own policy FOR CONSENTING TO DISMISSAL BASED ON COMPLAINANT'S COMPROMISED CREDIBILITY.

83. However, after he then directed me to hand my motions (including the CPL §30.20) to the court officer for him to review, Mr. Conviser disdainfully, dismissively and disrespectfully simply turned and yelled "**Let the jurors in!**", unlike Judge Lantry, he thereby signalled his intention to predetermine and pretextually deny the motions - otherwise he would have put me down for "second call" to first peruse the motions (esp. the 30.20) as they theoretically could have rendered any trial or further proceedings unnecessary - which I immediately perceived, causing me to blow up in anger and curse him ("Fuck you and your kangaroo court!", among other pleasantries) as I threw my motions as they were being discarded anyway.

84. Mr. Conviser then placed me for "second call", and hours later brought me back, except now with an additional restraining belt with handcuffs attached thereto which confined my hands to within an inch or 2 of my own genitals, as well as leg shackles, which in combination with the seating arrangement he was already employing with at least 3 court officers in seats right behind me to barricade me to the defense table, would have clearly signaled 'Beware the manimal!' to the trial jury.

85. As I was proceeding pro se, and as he was forcing me to proceed without material and requested Discovery, in addition to refusing to even give me a 1-day adjournment and order D.O.C. to release my personal clothing I was arrested in that was in D.O.C. property storage ("a business suit, dress shoes, tie and overcoat", as I specified to him), to which he replied tauntingly "**This is not a fashion show.**", in refusing to order such release or adjournment, all of these additional constraints prohibited me from proceeding any further, and I asked if the plea was still available.

86. Incredibly, after all the coercions and constraints he subjected me to, both before and after my 'blow-up', he actually asked me "Are you pleading guilty voluntarily?", I frankly replied "Well, you leave me no choice."

87. After he then whined "I can't accept it [the plea] like that.", he recapped another plea colloquy prelude of "Are you pleading guilty because you wish to?", clearly signaling and compelling me to now conveniently and falsely answer "yes", I conformed.

88. However, as I then thought about the "Nordstrom Rack" 2022 Grand Larceny falsely elevated further from 4th° to 3rd° (if not already previously artificially elevated from Petit to Grand), I then definitively declared: "I'm not pleading guilty to the phony 3rd° "Nordstrom Rack" 2022 Grand Larceny."

89. In fact, Mr. Conviser repeated my statement as if it irritated him, or my stubbornness (and never mind that I detailed how and why A.D.A.s Paparo and Kaplan perpetrated the witness 'shell-game' to enable them to suborn perjury in the June 14-16, 2022 grand jury to result in the evidence and felony-grade false elevations), But Mr. PASACRETA, FOR THE ONLY TIME DURING HIS 9 MONTHS OF COUNSEL ASSIGNMENT, FINALLY SPOKE UP TO SUPPORT ME (AFTER BEING PERPETUALLY QUIET PREVIOUSLY, DESPITE HIS COGNIZANCE AND OUR DISCUSSIONS OF THE ISSUES) STATED "HE HAS A POINT"

90. THUS, AS A RESULT OF MY REFUSAL TO PLEAD GUILTY TO THE "NORDSTROM RACK" 2022 GRAND LARCENY - EVEN AT THE POSSIBLE EXPENSE OF THE PLEA DEAL (THOUGH OTHERWISE COERCED) - AND MR. PASACRETA'S SOLE INSTANCE OF ADVOCACY (CF, HIS CONSPIRACY CONFERENCES OF MARCH 17 AND APRIL 7, 2025 WITH A.D.A. PAPARO AND J. LITMAN, IF NOT ALSO IN PART 95 APRIL 9 & (3) IT WAS DISMISSED IN 'JUDGE' CONVISER'S APRIL 16, 2025 D&O, THOUGH DECEITFULLY: "WHEN THE DEFENDANT ENTERED HIS GUILTY PLEA ON APRIL 15TH, HIS LEGAL ADVISOR NOTED THERE WAS A FACTUAL ISSUE WITH RESPECT TO THE VALUE OF THE ITEMS COMPRISING ONE OF THE GRAND LARCENY IN THE 3RD° CHARGES. HE ASKED AND THE COURT AGREED NOT TO SEEK A PLEA ON THOSE CHARGES DUE TO THIS CONTESTED VALUATION ISSUE."

PAGE 25

91. THUS, IT TOOK ME NEARLY THREE (3) YEARS TO GET THE ALLEGED
MARCH 25, 2022 ^ "NORDSTROM RACK" 4TH° GRAND LARCENY, CUM JUNE 16,
[— JUNE 10, 2022]
2022 3RD° GRAND LARCENY DISMISSED AFTER I FIRST ADDRESSED IT
IN 2022 MOTIONS TO DISMISS, THEN IN 2023, AND FINALLY IN 2025.

92. PLEASE NOTE, FOR THE FIRST INDICTMENT, IND.# 457/21, I WAS
OUT ON $10,000 CASH BAIL PAID BY MY FAMILY ON JULY 14, 2021, FOR
THE MARCH 6, 2021 ALLEGED "NORDSTROM'S" W.57TH ST. 3RD° GRAND
LARCENY, AND FOR THE EARLIER/FIRST CRIMINAL CASE FOR THE 2ND/OTHER
INDICTMENT, #72621/22, THE ALLEGED MARCH 13, 2022 "MACY'S" 4TH°
GRAND LARCENY, I WAS GIVEN A 'D.A.T.' ON MARCH 14, 2022, AND
ATTENDED ALL MY COURT DATES FOR ALL, "C.A.S.E.S." AND "JUDICIAL
DIVERSION" COUNSELING SESSIONS THROUGH JUNE 9, 2022.

93. SO WHEN I WAS ARRESTED JUNE 10, 2022, FOR THE ALLEGED
E.44TH ST. DUANE READE PETIT LARCENY (WHICH, BESIDES NOT BEING
BAIL ELIGIBLE, WAS EVENTUALLY DISMISSED), THE MARCH 25, 2022 ALLEGED
GRAND LARCENY - THE SOURCE OF THE NYPD'S "I-CARD" REPORTS FROM
MARCH 26, 2022 THRU MY JUNE 10, 2022 "DUANE READE" PETIT
LARCENY ARREST AND SUPPOSED 'INVESTIGATION' NOT YIELDING A SINGLE
INTERVIEW OF ME BY THE WARRANT SQUAD AS I NAVIGATED APPROX.
15 LAW ENFORCEMENT AGENCY APPOINTMENTS - WAS THE SOLE CASE
AND CHARGE UPON WHICH I WAS REMANDED AND DETAINED OVER
34 MONTHS BEFORE IT WAS DISMISSED.

94. ASIDE FROM THE PROSECUTORIAL MISCONDUCT INVOLVED, THE LONG
DELAY IN DISMISSAL WAS DUE IN LARGE PART TO THE SERIES OF JUDGES
THROUGHOUT THE 34 MONTHS, NEARLY ALL FORMER PROSECUTORS AND
CAUCASIAN (LONG-STANDING N.Y. STATE POLICY), 'THANKS' TO GOV. HOCHUL
AND N.Y. CITY MAYOR ERIC ADAMS (TO WHOM I WROTE ABOUT IT), AND
ADMINISTRATOR TEMBECKTIAN'S REFUSAL TO HOLD ACCOUNTABLE FOR ROUTINE
BASIC N.Y. STATE CRIMINAL LAW BENEFICIAL TO DEFENDANTS.

ON THIS JUNE 9, 2025, I, MICHAEL BONANO, DECLARE FOREGOING TRUTHFULLY,
TRUE, UNDER PENALTY OF PERJURY, UNDER U.S. LAW.

## CAUSES OF ACTION

FIRST CAUSE OF ACTION: A.D.A. SARAH LUBIN AND 17TH PRECINCT OFFICERS AND SUPERVISORS, IN VIOLATION OF BASIC BAIL REFORM AND RELATED D.A.T. POLICY, AND CONTRARY TO THEIR DECISIONS REGARDING MY THREE (3) PRIOR ARRESTS, REFUSED TO PROVIDE ME RELEASE UNTIL AND THROUGH CRIMINAL ARRAIGNMENT ON JUNE 10, 2022, DESPITE MY POSSESSION AND PROVISION OF MY PHOTO I.D., ACTUAL NAME AND ADDRESS, THEREBY RELEGATING ME TO DETENTION TO AND THROUGH ARRAIGNMENT, thus subjecting me to the application of the unconstitutional CPL § 510.10(4)(s), a.k.a. the 'potentially discretionary persistent offender' strawman/fiction, contrary to the U.S. Constitution's 5th Amendment's's prohibition against detention #for "an infamous or otherwise heinous crime, except upon indictment" and N.Y. Constitution's Art. 1, §6's identical clause, as the 2019 Bail Reform resulted in essential but inescapable inference that 4th° Grand Larceny (and other non-violent "E" and "D" felonies) are not (or no longer are) "infamous or otherwise heinous crimes" which a N.Y. defendant can be detained for either prior to or after indictment, but only upon and after conviction and/or sentencing., detaining me illegally.

2nd Cause of Action: A.D.A.s Maureen Paparo and Zachary Kaplan conspired with and commandeered "Nordstrom Rack" employee Nelson Merida to suborn and present false, perjurious testimony to knowingly and falsely claim that, in the June 14-16, 2022 grand jury, that I now had "over $3,000 dollars" in store merchandise, contrary to their own agency's June 10, 2022 felony complaint alternately specifying only "over $1,000" and "over $2,000", as well as, moreover, the numerous NYPD 'I-Card' reports specifying "$2,247" and only in "assorted high heels", thus maliciously and wrongly elevating the felony grade for the 2nd/latter indictment from "E", to "D", and the P.L. charge from 4th° to 3rd° Grand Larceny to falsely amplify my maximum sentencing exposure therefor from "2 to 4" to "3½ to 7", and artificially increase their leverage for a plea to a felony disposition, thus violating my rights to compulsory process, due process (both procedurally and substantively), to fair proceedings and to be free from unlawful and/or false conviction under the U.S. and N.Y. Constitutions and Napue v. Illinois.

3rd Cause of Action: A.D.A.s Maureen Paparo and Mark Monaco proceeded to knowingly# and falsely claim they believed I could qualify as a discretionary persistent offender despite their own office's appellate reply brief admissions to my 2001 and 2004 convictions being infected with "constitutional error" (ineffective assistance for the '01 conviction, admitted by A.D.A. Donald J. Siewert; and bias of the trial judge for the '04 conviction, admitted by A.D.A. Eli R. Koppel), per the basic principle of "collateral estoppel", and alternately that my charges and criminal history could not qualify for persistent offender designation under CPL 400.20 and PL §70.10 to warrant extended incarceration and lifetime supervision, thus violating my rights to be free from unlawful detention under the U.S. and N.Y. Constitutions and 2019 Bail Reform.

4th Cause of Action: Midtown South NYPD precinct Detective William Tierney, and other March 25, 2022 "Nordstrom Rack" larceny investigators, along with A.D.A. Sarah Lubin ignored their agency and N.Y. State law obligations to voucher and store the physical evidence, thereby enabling subsequent false evidence amplifications and VIOLATIONS OF MY RIGHT TO BE FREE FROM FALSE ACCUSATIONS, DUE PROCESS AND FAIR PROCEEDINGS.

CAUSES OF ACTION (Con't)                    Page 2

5th Cause of Action: Governor Kathy Hochul's 2021 coercion of the N.Y. State legislature, as part of budget reconciliation process, to dilute the Bail Reform by adding subdivision(4), paragraph (s) to C.P.L. §510.10, defied not only her predecssor's and legislature's creation and intent to form/designate non-violent "D" and "E" felonies as not/or other than "heinous or otherwise infamous crimes", and **thus not subject to allowing detention of defendants therefor, either prior to, or following grand jury indictment**, now allows for false detention and impairments of due process and fair proceedings by ignoring the U.S. and N.Y. Constitutions' clauses otherwise forbidding such detention by creating an unconstitutional exception for N.Y. defendants who have been twice previously convicted, compounding said violation(s) by also running afoul of **prohibition against Ex-post facto laws set forth** within the U.S. federal and N.Y. State Constiautions.

6th Cause of Action: A.D.A.s Mark Monaco and Maureen Paparo ignored their ethical obligations and my rights to be free from false accusations and to due process and fair proceedings by repeatedly refusing to acknowledge the June 14-16, 2022 grand jury subornation even after I repeatedly, explicitly presented it in my filings and in-court verbal addresses.

7th Cause of Action: A.D.A.s Mark Monaco and Maureen Paparo were repeatedly and systematically allowed to violate my rights to be free from unlawful detention and unlawful accusation, as well as to procedural and substantive due process and fair proceedings by a criminal court judiciary stacked almost exclusively with former prosecutors (career prosecutors, at that), and mostly Caucasian in addition thereto, as produced by N.Y. Governor Kathy Hochul and N.Y. City Mayor Eric Adams, in perpetuating an informal, perhaps unofficial but actual policy of causing unbalanced proceedings against mostly Black and Latino defendants that ignore prosecutorial misconduct, significant procedural and substantive errors, **thus encouraging the prosecutors to persist with their unconstitutional and even criminal policies and practices as prosecutor-infested judiciary allows them to continue with immunity and impunity.**

8th Cause of Action: Mr. Robert Tembeckjian, Adminõstrator of the Commission on Judicial Conduct, by persisting in dismissing otherwise colorable and valid judicial complaints against criminal court judges, almost certainly as the judges are predominately white and complaining defendants @@@@@@@@@predominately **Black and Latino**, ahds encourages the judges to continue to administer criminal case proceedings with palpable partiality to the prosecutors, in defiance of defendants' rights to an impartial adjudicator, due process and fair proceedings, in violation of the Constitutions and Chapman v. California, 386 U.S. 18.

9th Cause of Action: A.D.A.s LUBIN, PAPARO, KAPLAN & MONACO, THE N.Y COUNTY D.A.'S OFFICE AS AN ENTITY, NYPD OFFICERS TIERNEY AND THE NYPD AS AN ENTITY, AND "NORDSTROM RACK" EMPLOYEE NELSON MERINA AND "NORDSTROM'S" AS AN ENTITY, PROSECUTED THIS LATINO PLAINTIFF, DESPITE MY NEVER PREVIOUSLY BEEN CAUGHT THERE, HAVING PURCHASED PREVIOUSLY THERE AND HAVING INITIALLY COOPERATED WITH THEM ON MARCH 25, 2022, CONTRARY TO THEIR POLICY TO DECLINE TO PROSECUTE WHITES, AND CONSISTENT WITH POLICY TO PROSECUTE BLACKS AND LATINOS, RESULTING IN MY PROSECUTION BEING PURSUED AND MY DETENTION EFFECTUATED IN PERPETUATING RACIAL DISCRIMINATION PER 42 USC §§§1981, 1983 AND 1985.

**INJURIES:** (SEE, ALSO 2 PAGES OF CAUSES OF ACTION)

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

34 MONTHS OF UNLAWFUL DETENTION, MENTAL DURESS, LOSS OF LIBERTY, FAMILIAL RELATIONS, EMPLOYMENT AND WAGES

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

3 MILLION DOLLARS IN COMPENSATORY AND PUNITIVE DAMAGES, A DETERMINATION ON THE UNCONSTITUTIONALITY OF CPL §510.10(4)(s), AND FAR MORE BALANCE AND EQUITY REGARDING ETHNIC COMPOSITION OF JUDICIARY (i.e. MORE BLACKS AND LATINOS) AND PROFESSIONAL COMPOSITION (i.e. MORE DEFENSE ATTORNEYS, CIVIL ATTORNEYS, AND FAR FEWER PROSECUTORS), AND, FINALLY, THAT POLICE AND PROSECUTORS MUST COMPLY WITH CPL §245.20(1),(1)(i),(1)(m) & (1)(o), PENAL LAW §450.10 AND PEOPLE V. KELLY, 62 NY2d 516, 520 TO PROSECUTE RETAIL STORE THEFT/LARCENY, OR FORFEIT PROSECUTION.

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

JUNE 9, 2025
Dated

MICHAEL
First Name                     Middle Initial

Plaintiff's Signature

BONAND
Last Name

NORTH INFIRMARY COMMAND ('N.I.C.') UNIT 4 SOUTH, 15-00 HAZEN STREET
Prison Address

EAST ELMHURST                     N.Y.                     11370
County, City                      State                    Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:   JUNE 9, 2025

Page 6

# EXHIBIT

# A

| Tracking# 72974146 | | | | | | |
|---|---|---|---|---|---|---|
| INTERVIEW IN-PERSON | | | | Crime/ Condition GRAND LARCENY | Command 61d MIDTOWN PRECINCT SOUTH Date of This Report 03/26/2022 | |

| Date of UF61 03/25/2022 | Complaint No. 2022-014-02124 | Date Case Assigned 03/26/2022 | Case No. 2022 1502 | Unit Reporting SQUAD | Follow-Up No. 1 |
|---|---|---|---|---|---|

| Topic/Subject (INTERVIEW IN-PERSON) INTERVIEW IN/ | | Activity Date 03/26/2022 | Activity Time 00.15 |
|---|---|---|---|

| Complainant's Name NORDSTROM | Address 865 AVENUE OF THE AMERICAS MARKET ENTRY | | Apt No. |
|---|---|---|---|

| Nickname/Alias/Middle Name | | | |
|---|---|---|---|

| Sex BUSINESS | Race | Date of Birth | Age | | |
|---|---|---|---|---|---|

| Home Telephone | Business Telephone 646-881-5440 | Cell Phone | Beeper # | E Mail Address |
|---|---|---|---|---|

| Person Interviewed Last Name, First M.I. PERKINS, CRAIG | Address | Apt No. |
|---|---|---|

| Nickname/Alias/Middle Name | | | | |
|---|---|---|---|---|

| Position/Relationship STRANGER | Sex MALE | Race BLACK | Date of Birth | Age 31 |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

### Details

#### Summary of Investigation:

1. On March 26, 2022, at approximately 2215 hours I did conduct an interview with the C/V in regards to this investigation. ~~2.. Mr. Perkins states in sum and substance that he is employed as a loss prevention officer at Nordstrom Rack. He states that he had apprehended a shoplifter that was observed concealing and removing multiple items from a display and wrapping the security tags in the foil. He states the male was escorted to the loss prevention office for processing and to await the police. He states he did a search of the perpetrator's person and removed a pair of wire cutters from him. He states that while attempting to handcuff the perpetrator to a bench the perpetrator leapt forward and took the wire cutters from his table and threatened to cut him. He states that a struggle ensued in which the perpetrator exited the loss prevention office and then attempted to re-enter the office, which they prevented him from doing so. He states that the perpetrator then fled the location via the employee entrance and fled south bound on 6th Avenue. 3. He also informed me that the perpetrator left his NYS Benefit Card in the loss prevention office.

| Perpetrator's Last Name, First M.I. BONANO, MICHAEL | Wanted/Arrested WANTED |
|---|---|

| Nickname/Alias/Middle Name | | | | |
|---|---|---|---|---|

| Address | Apt No. | Res. Pct. | NYSID No. | |
|---|---|---|---|---|

| CRIME DATA | DETAILS |
|---|---|
| STATEMENTS MADE | BACK THE FUCK UP OR IM GOING TO FUCKING STAB YOU |
| METHOD OF FLIGHT | FOOT |
| MODUS OPERANDI | TOOK MERCHANDISE/MENACED |
| ACTIONS TOWARD VICTIM | TOOK MERCHANDISE/MENACED |
| CLOTHING | FOOTWEAR -DRESS SHOES -BLACK |
| CLOTHING | ACCESSORIES -SLACKS -GRAY |
| CLOTHING | OUTERWEAR -SPORT / DRESS JACKET -GRAY |
| CLOTHING | HEADGEAR -SKULLCAP -GRAY |
| CHARACTERISTICS | EYEGLASSES |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

**ARRESTS:**  Complaint # 2022-014-003164

| Arrest ID | Status | Defendant Name | Sex | Race | Age | Arrest Date |
|---|---|---|---|---|---|---|
| M22621793 | ACTIVE | BONANO, MICHAEL | MALE | HISPANIC WHITE | 56 | 06/10/2022 |

**PROPERTY:**  Complaint #2022-014-003164  **Lost/Stolen/Found: STOLEN**

| Item | Property Category: | Owner Identification Num: | Qty | Description | Serial # | Property Type | $ Stolen | $ Recovered |
|---|---|---|---|---|---|---|---|---|
| 1. | BUSINESS | NONE | 6. | ASSORTED HIGH HEELS | | MISCELLANEOUS | 2247. | 2247. |

TOTAL VALUES: STOLEN $ 2247. RECOVERED $ 2247.

**EVIDENCE:**  Complaint # 2022-014-003164

| Evidence Collected?: | Evidence Collection Team/ Crime Scene Requested?: | ECT Responded?: | ECT Run#: | Crime Scene Responded?: | Crime Scene Number: |
|---|---|---|---|---|---|
| NO | NO | NO | | NO | - |

| Evidence | Invoice # |
|---|---|
| | |

**No IMEI Data for Complaint # 2022-014-003164**

**NOTIFICATIONS / ADDITIONAL COPIES:**  Complaint # 2022-014-003164

Notifications to:

| Rank/Title | Name | Unit/Agency | Log # |
|---|---|---|---|
| INS | OHARE | MTS | |
| PO | OSEI | ECT | |
| DET | KEALEY | PDU | |

| Reporting/Investigating M.O.S. Name: POM GUIDO JOSEPH | Tax #: 968463 | Command: M PCT S | Rep.Agency: NYPD |
|---|---|---|---|

XN02773K

DOB
12/04/1995

BONANO
MICHAEL

CARD NUMBER
60486 8926 2027 739 66

ACCESS NUMBER
8926 2027 739 66

Page 1 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Michael Bonano (M 56),

Defendant.

FELONY

ADA Sarah Lubin
2123353843

Detective William Tierney, Shield #4324 of the Midtown South Precinct Detective Squad, states as follows:

*The defendant is charged with:*

1  PL 155.30(1)          Grand Larceny in the Fourth Degree
                         (defendant #1: 1 count)
2  PL 120.15             Menacing in the Third Degree
                         (defendant #1: 1 count)

On or about March 25, 2022 at about 08:42 PM, inside 865 6th Avenue; in the County and State of New York, the defendant stole property valued in excess of 1,000 dollars; the defendant, by physical menace, intentionally placed and attempted to place another person in fear of death, imminent serious physical injury, and physical injury;

*The factual basis for these charges are as follows:*

I am informed by Informant, of an address known to the District Attorney's Office, that they observed the defendant remove several clothing items from the displays of the Nordstrom at the above described location.
I am further informed by Informant that they then observed the defendant bypass the store cash registers and attempt to leave the store without paying for the above described items.
I am informed by Informant, who works for Nordstroms, that they are a custodian of the above described items and that the defendant did not have permission or authority to take or possess the items and that the items have a value of over $2,000.
I am further informed by Informant that after the defendant was apprehended, the defendant picked up a pair of wire cutters and brandished them in Informant's direction while stating in substance "I'll fucking stab you."



# EXHIBIT

# B

## Supplementary Facts

Bail: $10k/$30k icb/$30k pssb @10% - This D is a discretionary persistent felony offender as defined in Penal Law 70.10 from a Burg 3 conviction where the defendant was sentenced on 3/31/2011 to 6-12 years jail, after having been convicted of Rob 3 and sentenced on 3/10/04 to 42 months to 7yrs jail and to Attempted Assault 2 in 2001 where the D was sentenced to 2 yrs jail on 9/6/01. Under CPL 510.10(4)(s) monetary bail can be set on this defendant. The defendant has the 3F described above as well as a 4th felony for Att. Burg 2. This D also has 41M and has FTA on at least 23 separate cycles, and has 3 parole revocations. Further, this D has used 33 different aliases, 9 different DOBs, and 10 SSNs after being arrested. In this case, the defendant is observed by employee's of Nordstrom's taking two jacket's from a rack, placing them into a black trash bag and exiting the store through a fire exit before being stopped by loss prevention officers. Given the D's criminal history, his status as a discretionary persistent felony offender, his extensive history of failures to appear, his use of numerous aliases, SNNs, and DOBs when arrested, and the strength of the case, monetary bail is necessary to ensure the D's return to court and the people are requesting bail in the amount of $10k/$30k icb/$30k pssb at a rate of 10%

## Police Witness

| PO Witness Type | Name | Shield | Tax # | RDO | Shift |
|---|---|---|---|---|---|
| Arresting Officer<br>Deponent: Y | Police Officer Kamilla Salyamova 13342<br>Command: Midtown North Precinct<br>Contact:<br><br>Notes: kamilla.salyamova2@nypd.org | | 966830 | sq 3 | 1500 - 2335 |
| | Police Officer Sarena Salonia 22294<br>Command: Midtown North Precinct<br>Contact:<br><br>Notes: | | 968774 | | |
| | Police Officer Liosmely Holguin 13031<br>Command: Midtown North Precinct<br>Contact:<br><br>Notes: | | 966628 | | |

## Civilian Witness

| Name | Address and Phone |
|---|---|
| Justin Bare,<br>Witness Type: Eyewitness<br>*Defendant's Relationship:<br>Stranger<br>Contacted: N<br>DOB:03/10/1989<br>Gender: | Address(es):<br><br>Phone(s):<br>Work Phone: (212)295-2152<br>CW Notes: LPO at Nordstrom |
| Dwight Campbell,<br>Witness Type: Eyewitness<br>*Defendant's Relationship:<br>Contacted: N<br>DOB:06/12/1980<br>Gender: | Address(es):<br><br>Phone(s):<br>(631)828-9107<br>CW Notes: |

## Vouchers

| Details | Description |
|---|---|
| | |

## Defendant Address and Pedigree

| Name | Address |
|---|---|
| Anthony Cavello<br>NYSID:<br>DOB: 12/14/1968<br>Age at Occ: 52<br>Race:<br>Gender: M | Phone(s) |

# EXHIBIT

# C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE PEOPLE OF THE STATE OF NEW YORK

-against-

MICHAEL BONANO,

                                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuses the defendant of the crime of **GRAND LARCENY IN THE THIRD DEGREE**, in violation of Penal Law §155.35(1), committed as follows:

The defendant, in the County of New York, on or about March 25, 2022, stole property from Nordstrom Rack, at 865 6th Avenue, and the value of the property exceeded three thousand dollars.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE THIRD DEGREE**, in violation of Penal Law §165.50, committed as follows:

The defendant, in the County of New York, on or about March 25, 2022, with intent to benefit himself, and a person other than an owner thereof and to impede the recovery by an owner thereof, knowingly possessed stolen property owned by Nordstrom Rack, at 865 6th Avenue, and the value of the property exceeded three thousand dollars.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of GRAND LARCENY IN THE FOURTH DEGREE, in violation of Penal Law §155.30(1), committed as follows:

The defendant, in the County of New York, on or about March 25, 2022, stole property from Nordstrom Rack, at 865 6th Avenue, and the property had a value in excess of one thousand dollars.

FOURTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FOURTH DEGREE, in violation of Penal Law §165.45(1), committed as follows:

The defendant, in the County of New York, on or about March 25, 2022, with intent to benefit himself, and a person other than an owner thereof and to impede the recovery by an owner thereof, knowingly possessed stolen property owned by Nordstrom Rack, at 865 6th Avenue, and the value of the property exceeded one thousand dollars.

FIFTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of MENACING IN THE SECOND DEGREE, in violation of Penal Law §120.14(1), committed as follows:

The defendant, in the County of New York, on or about March 25, 2022, intentionally placed and attempted to place an individual known to the Grand Jury in reasonable fear of physical injury, serious physical injury and death by displaying a dangerous instrument, to wit, a sharp object.

Merida                                    26

Q.    What, if anything, did you do with the store merchandise once it was recovered?

A.    . Once we recovered the merchandise if it is not damaged we return it to stock.

Q.    Did you determine a value of the merchandise that was recovered?

A.    Yeah, so all of these were roughly $3,107.

Q.    Is that value before tax?

A.    Yes.

Q.    How do you know what the total value was?

A.    We had to key in all stolen merchandise in are database.  Once we key in the value of the merchandise it gives us a pretax value of everything.

Q.    Can you please describe for the grand jury what keying in means?

A.    Each item here has a barcode specifically meant for that specific item.  I keyed in that barcode into are database and that was the value of every single item.

Q.    So, just to be clear, each of these items that are displayed had a bar code; is that correct?

KC

27

Merida

A.    Yes, the three shirts on top the tag is on them.  In Nordstrom it has a sticker.  It is hard to take that off.  Every single item has a tag on them.

Q.    From the tags you are able to key in the items and determine the valve of each item, correct?

A.    Yes.

Q.    And you calculated that $3,000 amount approximately by adding all of those items together; is that correct?

A.    Yes.

Q.    Did you have any further involvement in this case after March 25, 2022?

A.    Just assisting detectives with any further information they might have needed, but besides that no.

MS. PAPARO:  I have no further questions for this witness, and seeing none from the grand jury -- oh, there's one.

(CONFERRING)

MS. PAPARO:  Any further questions from the grand jury?  Seeing none.  Mr. Merida, you are excused.

KC

4 SOUTH, NORTH INFIRMARY COMMAND
(.C.) 15-00 HAZEN STREET
ELMHURST, N.Y. 11370

RECEIVED
JUL 01 2025
PRO SE OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK (S.D.N.Y.)
PRO SE INTAKE UNIT
500 PEARL STREET, ROOM 120
NEW YORK, N.Y. 10007

U.S.M.
SDNY

